MONROE, C. J.
Defendant, having been tried for murder, convicted of manslaughter, and duly sentenced, prosecutes this appeal.
[1] 1. He was indicted on September 8, 1916, was arraigned and pleaded not guilty on September 10th, and on October 2d, following, moved to quash the indictment, on the ground that the grand jury by which it had been found was illegally constituted, for the reason that the jury commission, by which the grand jury was drawn, was never legally organized as required by law; and, the motion having been overruled, a bill was reserved.
No reason is alleged for the delay in the filing of the motion, and, in a stronger case than is here presented, it was said by the court:
“Obviously nothing in the motion exempted it from the operation of the statute” (Act 44 of 1877, § 11), “and, under the plain terms thereof, the judge was not only authorized, but bound, to overrule it, and the correctness of his ruling in so doing cannot be questioned.” State v. Sterling, 41 La. Ann. 681, 6 South. 584.
*563 And so, in State v. Wyatt, 50 La. Ann. 1302, 24 South. 335, it was said (quoting from the syllabus):
“The motion to quash, having been made by defendant after pleading to the merits, was too late, in the absence of an affirmative showing that neither the accused himself nor his counsel was ignorant of the facts when defendant pleaded”—citing authorities.
[2] 2. C. D. Perry, examined on his voir dire, was asked whether any one had spoken to him about the case; and when; at what hour; and whether any appeal had been made to him in behalf of either the accused or the state. To which questions, respectively, he answered that he had been approached that day, at 11 or 11:30 o’clock, and that no appeal had been made to him. He was then asked if he knew whether the party who approached him was friendly to the accused or the state, to which defendant’s counsel objected, and, the objection having been overruled, reserved a bill. But the juror did not answer the question, and we fail to discover in what respect the question could have prejudiced the defendant, even though it should be conceded that the answer might have done so.
[3] 3. After twelve jurors had been accepted by the state, but not sworn in, the district attorney moved that one of them be excused on the ground that he had stated, on 'his voir dire, that he had not been approached or talked to, by any one, on behalf of either side, since he had been subpoenaed, but that mover had reason to believe that the statement so made was false, and that the brother and father-in-law of defendant had approached the juror and had conversed with him on the day that the case was called for trial, and that mover had reason to believe that he had been influenced by the conversation, had been guilty of misconduct, and would not make a fair and impartial juror. Defendant, through counsel, objected and reserved a bill to the overruling of his objection; and, the court thereupon heard testimony upon the motion, with the result, as appears from the record and from a statement in the brief of defendant’s counsel, that the juror was not excused, and, as appears from a statement in the brief filed on behalf of the state, that “the judge became satisfied that the juror was incompetent to sit, and excused him.”
The objections stated by defendant’s counsel were that the motion came too late, after the juror had been accepted, and that no fact had been alleged as true, “and consequently that the relief sought by the motion could not be granted if the allegations contained therein could be established.”
The purpose of the motion, however, was to provoke an inquiry into the matter alleged, which it was not only within the power of the judge, but was his duty, to do.
[4] 4. Another bill contains the recital that, in his closing argument, the district attorney said, among other things:
“That was at the bottom of the matter.” That, immediately preceding this statement the argument of the district attorney was to the effect that the accused killed the deceased, not in self-defense, but for the sole reason that the latter had refused to obey the former’s instructions relative to working the crop on the place on which they resided—the accused, under the evidence, being the lessee of that place, and the deceased a tenant thereof. The above remark was the district attorney’s summing up on this point, and, taken in connection with his argument thereon, was a clear and unequivocal announcement of .his conclusion and as to “the fact that the accused had taken the life of the deceased for the reason above stated, not in self-defense, but because the deceased had refused to obey his instructions relative to the working of the crop.”
The statement per curiam reads:
“The district attorney did not, in so many words, state that this was his opinion, but the argument tended to indicate that it was. When the objection was made, the court instructed the jury that counsel for the state had no right to give or urge a personal opinion, but could state conclusions which he thought the proven facts warranted; whereupon the district attorney stated that he did not intend to express his opinion, or view, but what he thought the evi *565 dence in the case indicated. The court also explained to the jury that they were the judges of the law and the evidence, and they should not take what counsel for either side said about the matter, but the facts as they heard them from the witnesses, and the law as given by the court.”
The bill, we think, is without merit. The prosecuting officer has the right to sum up the facts as he conceives them to have been established by the evidence, and in so doing, necessarily, gives his opinion of the value and effect of the evidence. He has no right to go outside and bring in matters upon which the evidence has no bearing, nor has he the right to express an opinion save as based upon the evidence; but he is not required to interrupt himself constantly in order to assure the jury that he is offering no other opinion.
“The prosecuting officer has the right to press upon the jury any view of the case arising out of the evidence.” State v. Johnson & Butler, 48 La. Ann. 89, 19 South. 214; State v. Jones, 51 La. Ann. 106, 24 South. 594; State v. Meche, 114 La. 231, 38 South. 152; State v. Gallo, 115 La. 750, 39 South. 1001.
[5] 5. A motion in arrest of judgment ah leges, among other things, that defendant, through counsel, moved to quash the indictment, and that the motion last mentioned was tried and evidence adduced out of his presence, “as shown by the minutes,” whereupon the court, on motion of the district attorney, and over defendant’s protest, caused the following order to be entered, to wit:
“It appearing that the minutes of October 2, 1916, in this case, failed to show the presence of the accused at the filing and trial of the motion to quash, and that, as a matter of fact, he was present, it is ordered that the minutes be corrected to show his presence” — to which ruling a bill was reserved.
A court may correct its minutes in accordance with the facts, and, as the correction in this instance appears to have been made from the judge’s own knowledge of the proceedings before him, and in presence of defendant’s counsel, who protested but made no offer of evidence, it affords no just ground of complaint. Moreover, it was not necessary that defendant should have been present upon the occasion in question, since the matter involved did not bear upon the question of his guilt or innocence of the charge for which he was being prosecuted. State v. Gonsoulin, 38 La. Ann. 460; State v. Dominique, 39 La. Ann. 324, 1 South. 665; State v. Hardaway, 50 La. Ann. 1349, 24 South. 320; State v. Le Blanc, 116 La. 829, 41 South. 105.
A few other points are raised by the bills, but are not urged in the brief, and some matters urged in the brief, are not in the hills. We have considered them and fail to find anything which entitles defendant to relief at our hands.
The verdict and sentence appealed from are therefore affirmed.
SOMMERVILLE, J., concurs.